Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:  bheikali@faruqilaw.com

[Additional Captions on Signature Page]

*Attorney for Plaintiff Alex Victor*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALEX VICTOR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HORTONWORKS, INC., ROBERT BEARDEN, KEVIN KLAUSMEYER, MARTIN FINK, JAY ROSSITER, MICHELANGELO VOLPI, PAUL CORMIER, and PETER FENTON, <br><br> Defendants. | Case No. 3:18-cv-06923 <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Alex Victor ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Hortonworks, Inc. ("Hortonworks" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Hortonworks, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Transaction") of Hortonworks and Cloudera, Inc. ("Cloudera").

2. On October 3, 2018, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which Hortonworks' stockholders will receive 1.305 shares of Cloudera common stock in exchange for each share of Hortonworks common stock (the "Merger Consideration").

3. On November 5, 2018, in order to convince Hortonworks shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "S-4") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the S-4, they have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby rendering certain statements in the S-4 false and/or misleading.

5. In particular, the S-4 contains materially incomplete and misleading information concerning: (1) the financial projections for the Company, which were developed by the

1

Company's management and utilized by the Company's financial advisor, Qatalyst Partners ("Qatalyst") in rendering its fairness opinion, both of which were relied upon by the Board in recommending shareholders vote in favor of the Proposed Transaction; and (2) the sale process leading up to the Proposed Transaction.

6. It is imperative that the material information that has been omitted from the S-4 is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for contraventions of: (i) Rule 14a-9; and (ii) Regulation G, 17 C.F.R. § 244.100, in violation of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to Hortonworks shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Hortonworks is headquartered in this District.

## PARTIES

11. Plaintiff is, and at all relevant times has been, a Hortonworks shareholder.

12. Defendant Hortonworks is a Delaware corporation and maintains its principal executive offices at 5470 Great America Parkway, Santa Clara, California 95054. Hortonworks' common stock is traded on the NASDAQ GS under the ticker symbol "HDP."

13. Individual Defendant Robert Bearden co-founded the Company, has served as a director of the Company since April 2011, as the Chief Executive Officer since 2012, and Chairman of the Board since 2015.

14. Individual Defendant Kevin Klausmeyer has been a director of the Company since 2014.

15. Individual Defendant Martin Fink has been a director of the Company since 2014.

16. Individual Defendant Jay Rossiter has been a director of the Company since 2011.

17. Individual Defendant Michelangelo Volpi has been a director of the Company since 2011.

18. Individual Defendant Paul Cormier has been a director of the Company since 2011.

19. Individual Defendant Peter Fenton has been a director of the Company since 2011.

20. The Individual Defendants and Hortonworks may collectively be referred to as "Defendants." Each of the Individual Defendants herein is sued individually as well as in his or her capacity as an officer and/or trustee of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Hortonworks (the "Class"). Excluded from the Class are

Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22. This action is properly maintainable as a class action because:

    a. The Class is so numerous that joinder of all members is impracticable. As of November 1, 2018, there were approximately 83,585,542 shares of Hortonworks common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public shareholders of Hortonworks will be ascertained through discovery;

    b. There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

        i) whether Defendants disclosed material information that includes non-GAAP financial measures without a presentation and reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

        ii) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the S-4 in violation of Section 14(a) of the Exchange Act;

        iii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

        iv) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading S-4.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### SUBSTANTIVE ALLEGATIONS

23.     Hortonworks, Inc. provides global data management solutions via open-source platforms, which individual customers can modify and share with others through the Company's central repository. The Company serves clients throughout the world.

24.     On October 3, 2018, the Company announced the Proposed Transaction in a press release which states, in pertinent part:

**PALO ALTO, Calif. and SANTA CLARA, Calif., October 3, 2018** — Cloudera, Inc. (NYSE: CLDR) and Hortonworks, Inc. (Nasdaq: HDP) jointly announced today that they have entered into a definitive agreement under which the companies will combine in an all-stock merger of equals. The transaction, which has been unanimously approved by the Boards of Directors of both companies, will create the world's leading next generation data platform provider, spanning multi-cloud, on-premises and the Edge. The combination establishes the industry standard for hybrid cloud data management, accelerating customer adoption, community development and partner engagement.

Tom Reilly, chief executive officer at Cloudera, stated, "Our businesses are highly complementary and strategic. By bringing together Hortonworks' investments in end-to-end data management with Cloudera's investments in data warehousing and machine learning, we will deliver the industry's first enterprise data cloud from the Edge to AI. This vision will enable our companies to advance our shared commitment to customer success in their pursuit of digital transformation."

"This compelling merger will create value for our respective stockholders and allow customers, partners, employees and the open source community to benefit from the enhanced offerings, larger scale and improved cost competitiveness inherent in this combination," said Rob Bearden, chief executive officer of Hortonworks. "Together, we are well positioned to continue growing and competing in the streaming and IoT, data management, data warehousing, machine learning/AI and hybrid cloud markets. Importantly, we will be able to offer a broader set of offerings that will enable our customers to capitalize on the value of their data."

Under the terms of the transaction agreement, Cloudera stockholders will own approximately 60% of the equity of the combined company and Hortonworks stockholders will own approximately 40%. Hortonworks stockholders will receive 1.305 common shares of Cloudera for each share of Hortonworks stock owned, which is based on the 10-day average exchange ratio of the two companies' prices though October 1, 2018. The companies have a combined fully-diluted equity value of $5.2 billion based on closing prices on October 2, 2018.

**Transaction Highlights**

- Establishes the next generation data platform leader with increased scale and resources to deliver the industry's first enterprise data cloud, providing the ease of use and elasticity of the public cloud from the data center, to the Edge and everywhere in between
- Creates a superior unified platform and clear industry standard from the Edge to AI, substantially benefiting customers, partners and the community
- Accelerates market development and fuels innovation in IoT, streaming, data warehouse, hybrid cloud, machine learning/AI
- Expands market opportunity with complementary offerings, including Hortonworks DataFlow and Cloudera Data Science Workbench
- Enhances partnerships with public cloud vendors and systems integrators
- Expected to generate significant financial benefits and improved margin profile:
    - Approximately $720 million in revenue
    - More than 2,500 customers
    - More than 800 customers over $100,000 ARR
    - More than 120 customers over $1 million ARR
    - More than $125 million in annual cost synergies
    - More than $150 million cash flow in CY20
    - Over $500 million cash, no debt

**Management and Board of Directors**

Following completion of the transaction, Cloudera's Chief Executive Officer, Tom Reilly, will serve as Chief Executive Officer; Hortonworks' Chief Operating Officer, Scott Davidson, will serve as Chief Operating Officer; Hortonworks' Chief Product Officer, Arun C. Murthy, will serve as Chief Product Officer; and Cloudera's Chief Financial Officer, Jim Frankola, will serve as Chief Financial Officer, of the combined company. Hortonworks' Chief Executive Officer, Rob Bearden, will join the board of directors. Current Cloudera board member, Marty Cole, will become Chairman of the board of directors.

The board of directors of the newly-formed company will initially comprise nine directors. Four directors, including Mr. Bearden, will come from Hortonworks' existing board of directors. Five directors, including Mr. Reilly, will come from Cloudera's existing board of directors. A tenth director will be selected by the combined board.

A majority of the board of directors will be independent under New York Stock Exchange standards.

25.  The Merger Consideration appears inadequate in light of the Company's recent financial performance. Indeed, the implied share value of the Merger Consideration represents an almost 16% discount to the Company's 52-week high of $26.22.[1] The Company has reported steady sales growth for the past four fiscal years and for the most recent fiscal year, 2017, reported double-digit net income growth. Moreover, the Company has reported consistent revenue growth for the past three fiscal years and double-digit free cash flow growth for the past two fiscal years.

26.  In sum, it appears that Hortonworks is well-positioned for financial growth, and that the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

---

[1] The implied share value of the Merger Consideration was calculated by multiplying the exchange ratio, 1.305, by $16.90, Cloudera's closing price on October 2, 2018, the day before the Proposed Transaction was announced.

**The Materially Incomplete and Misleading S-4**

27. On November 5, 2018, Defendants caused the S-4 to be filed with the SEC in connection with the Proposed Transaction. The S-4 solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the S-4 before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the S-4 misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*The Materiality of Financial Projections*

28. A company's financial projections are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction. Here, the financial forecasts were relied on to approve the Merger Agreement and recommend the Proposed Transaction to shareholders as the S-4 discloses that the financial projections were prepared by the Company's management and "made available to the Hortonworks board and to the Cloudera board, as well as their respective financial advisors, for purposes of considering and evaluating the merger." S-4 at 72.

29. When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101). Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions. In regard to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K. *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

30. Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format." 17 C.F.R. § 229.10(b). Although the SEC recognizes the

usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items." *Id.*

31. In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*
>
> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

32. Here, Hortonworks' shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board specifically considered "the financial projections for Hortonworks prepared by Hortonworks management, which reflected certain assumptions of Hortonworks' senior management[.]" S-4 at 70.

33. As discussed further below, the financial projections here do not provide

9

Hortonworks' shareholders with a materially complete understanding of the assumptions and key factors considered in developing the financial projections.

### *The Financial Projections are Materially Incomplete*

34. The S-4 discloses financial projections for the years 2019-2023 for the Company (the "Hortonworks Financial Forecasts"), as well as financial forecasts for the combined company (the "Combined Company Financial Forecasts"), on pages 72-73. However, the S-4 fails to provide material information concerning the projections, which were developed by the Company's management and relied upon in recommending that shareholders vote in favor of the Proposed Transaction.

35. Specifically, the S-4 provides, *inter alia*, values for non-GAAP Operating Income (Loss) and Unlevered Free Cash Flow ("UFCF"), S-4 at 73, but fails to provide the line items used in their respective calculation or a reconciliation of these non-GAAP measures to their respective most comparable GAAP measures.

36. In regard to the Hortonworks Financial Forecasts, the S-4 defines non-GAAP Operating Income (Loss) as "a non-GAAP financial measure calculated to exclude share-based compensation, amortization of intangibles and other non-recurring items." S-4 at 73. In regard to the Combined Company Financial Forecasts, non-GAAP Operating Income (Loss) is "inclusive of revenue synergies." S-4 at 73. Nevertheless, the only line item disclosed to calculate this measure is "revenue synergies".

37. UFCF is defined as "a non-GAAP financial measure calculated by starting with Non-GAAP Operating Income (as shown in the table above) and subtracting cash taxes paid and capital expenditures, and then adding back depreciation expense and decrease in net working capital." S-4 at 73. Although not explicit, the Combined Company Financial Forecasts appear to include revenue synergies in its UFCF calculation as well. Similarly, no other line items used in the calculation of UFCF are disclosed.

38. The S-4 further discloses that "Hortonworks believe[s] that there is a degree of

volatility with respect to certain GAAP measures, and *certain adjustments made to arrive at the relevant non-GAAP measures*, which preclude[s] . . . Hortonworks from providing accurate forecasted non-GAAP to GAAP reconciliations." S-4 at 74 (emphasis added).

39. The S-4 provides an incomplete and materially misleading understanding of the Company's future financial prospects and the inputs and assumptions for which those prospects are based upon. Although the Defendants contend that the line items referenced above cannot be accurately forecasted, it is quite clear that those line items were in fact forecasted and utilized in calculating the non-GAAP measures disclosed.

40. As such, the financial projections disclosed on pages 72-74 of the S-4 are materially misleading as shareholders are unable to discern the veracity of the financial projections, which were apparently developed using line items that the Company claims were "not available." S-4 at 74.

41. As a result of the Company's incomplete disclosures surrounding the calculation of the above referenced financial metrics, the S-4 is materially misleading as shareholders are provided an incomplete and materially misleading understanding of the Company's future prospects.

42. As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

***The Financial Projections Violate Regulation G***

43. The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[2] and adopted Regulation

---

[2] Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. § 244.101(a)(1).

G[3] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[4]  More specifically, the company must disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[5]

44.  Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[6]  Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Hortonworks included in the S-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating

---

[3]  Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.
[4]  United States Securities and Exchange Commission, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (2002), *available at* https://www.sec.gov/rules/final/33-8176.htm (last visited November 14, 2018) ("SEC, *Final Rule*").
[5]  SEC, *Final Rule*.
[6]  *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/ (last visited November 14, 2018); Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0 (last visited November 14, 2018).

expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[7]

45. Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a). Thus, in order to bring the S-4 into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

### *The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9*

46. In addition to the S-4's violation of Regulation G, the lack of reconciliation or, at the very least, the line items utilized in calculating the non-GAAP measures renders the financial projections disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.

47. Such projections are necessary to make the non-GAAP projections included in the S-4 not misleading for the reasons discussed above. Indeed, Defendants acknowledge the financial forecasts "are subject to change and are susceptible to multiple interpretations[.]" S-4 at 74. As such, the projections are clearly material, and shareholders would clearly want a complete and non-misleading understanding of those projections.

48. As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 72-74, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

49. In sum, the S-4 independently violates: (i) Regulation G, which requires a

---

[7] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted) (last visited November 14, 2018).

presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the S-4 independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the S-4 to garner votes in support of the Proposed Transaction from Hortonworks shareholders.

50. Absent disclosure of the foregoing material information prior to the special shareholder meeting, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any [S-4] or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

53. As set forth above, the S-4 omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other

...

clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

54. The failure to reconcile the numerous non-GAAP financial measures included in the S-4 violates Regulation G and constitutes a violation of Section 14(a).

55. The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

56. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in S-4 communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9.

59. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

60. Defendants have issued the S-4 with the intention of soliciting shareholder support

for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the S-4, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

61. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the S-4, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

62. The Individual Defendants knew or were negligent in not knowing that the S-4 is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

63. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

64. The Individual Defendants were, at the very least, negligent in preparing and reviewing the S-4. The preparation of an S-4 statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the S-4 or failing to notice the material omissions in the S-4 upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

65. Hortonworks is also deemed negligent as a result of the Individual Defendants'

negligence in preparing and reviewing the S-4.

66. The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

67. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT III

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

68. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of Hortonworks within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Hortonworks, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

70. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

1 the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the S-4.

72. In addition, as described herein and set forth at length in the S-4, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

73. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

74. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

75. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been

omitted from the S-4;

C. Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 15, 2018

Respectfully submitted,

**FARUQI & FARUQI, LLP**

OF COUNSEL:

**FARUQI & FARUQI, LLP**

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

By: */s/ Benjamin Heikali*
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: (424) 256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*